THIS ORDER IS APPROVED.

Dated: November 16, 2020

Brenda Moody Whinery, Chief Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | Chapter 11 |
| SKYLINE RIDGE, LLC, | Case No. 4:18-bk-01908-BMW |
| Debtor. | **MEMORANDUM DECISION REGARDING CONFIRMATION OF AMENDED PLANS OF REORGANIZATION** |

On June 10, 2020, the Court issued its *Ruling and Order Regarding Plan Confirmation* (DE 620)[1] (the "Ruling and Order"), in which the Court denied confirmation of the competing plans proposed by Skyline Ridge, LLC ("Skyline" or the "Debtor") and Cinco Soldados, LLC ("Cinco"), and granted the parties leave to amend their respective plans to rectify the deficiencies set forth in the Ruling and Order. The Debtor and Cinco both timely filed amended plans as set forth below.

Before the Court are the *Debtor's Third Amended Plan of Reorganization Dated July 10, 2020* (DE 627) filed by the Debtor, as amended and modified by the *Notice of Typographical Errors Re: Debtor's Third Amended Plan of Reorganization* (DE 645) (collectively, the "Debtor's Amended Plan"); the competing *Second Modified Cinco Plan of Reorganization Dated September 18, 2018* (DE 632) filed by Cinco, as amended and modified by the *Notice of Errata in Second Modified Cinco Plan of Reorganization Dated September 18, 2018, Filed July 16, 2020*

---

[1] References to entries on the docket are indicated by "DE __."

*[Dkt. 632]* (DE 634) and the *Second Notice of Errata in Second Modified Cinco Plan of Reorganization Dated September 18, 2018, Filed July 16, 2020* (DE 652) (collectively, "Cinco's Amended Plan"); and all filings related thereto.

On August 6, 2020, the Court held a status hearing on plan confirmation, at which time the parties agreed that no further evidence was needed, but requested that the Court set a briefing schedule. The Court set August 21, 2020 as the deadline for filing briefs, and September 4, 2020 as the deadline for filing responses thereto.

Briefs, responses to those briefs, and certain joinders thereto were filed by the Debtor; Cinco; secured creditor Fotinos Properties, L.L.C. ("Fotinos"); secured creditor the Rallis Creditor Group;[2] non-insider general unsecured creditors Paula Stachowski, Daniel Stromberg, David Parri, Vicki Puchi-Saavedra, Eduardo Saavedra, and Earth's Healing, Inc.;[3] insider general unsecured creditor Samuel Zarifi ("Mr. S. Zarifi") and certain of his entities; and the principal of the Debtor, Ahmad Zarifi ("Mr. Zarifi").[4] (DE 653; DE 654; DE 655; DE 656; DE 657; DE 658; DE 663; DE 664; DE 665; DE 666; DE 667). The Court has considered all filed briefs and responses thereto.[5]

---

[2] Thomas J. Rallis and Mary P. Rallis, Trustees of the Thomas Rallis and Mary Rallis Trust dated December 19, 2002; Mark A. Clark and Susan B. Clark, Co-Trustees of the Mark and Susan Clark Family Trust UA September 13, 2002; John W. McDonald and Connie McDonald; Hit Tank LLC; Harriet Coulter; Karena Coulter; John W. McDonald, Trustee of the John W. McDonald Profit Sharing Plan; Samuel D. Alfred and Magan G. Alfred, Trustees of the Samuel D. Alfred and Magan G. Alfred Revocable Living Trust dated November 17, 2006; and Ronald D. Mercaldo and Dawn C. Mercaldo, Trustees under the Ronald D. Mercaldo and Dawn C. Mercaldo Revocable Living Trust dated May 21, 2008 will collectively be referred to as the "Rallis Creditor Group."

[3] Paula Stachowski, Daniel Stromberg, David Parri, Vicki Puchi-Saavedra, Eduardo Saavedra, and Earth's Healing, Inc. will collectively be referred to as the "Cinco Supporters."

[4] Mr. Zarifi's pleading is captioned a "Joinder in the Debtor's Objection to Confirmation of Cinco's Plan of Reorganization and Supplemental Argument." (DE 655). However, the time for Mr. Zarifi to object to Cinco's plan was January 16, 2019. (DE 221). Although the Court granted Cinco leave to amend its plan consistent with the Ruling and Order, the Court did not reopen the objection period. Further, Mr. Zarifi's treatment is only improved under Cinco's plan, as amended. As such, the Court will treat Mr. Zarifi's filing as a brief, and will not consider the novel objections or requests for reconsideration set forth therein.

[5] In the briefs filed by the Debtor, Mr. S. Zarifi and certain of his entities, and Mr. Zarifi, the parties appear to ask the Court to reconsider certain of the findings of fact and conclusions of law set forth in the Court's Ruling and Order. (*See* DE 653). Given that none of these parties have filed an appropriate motion pursuant to the Federal Rules, the Court will not consider the requests for reconsideration embedded in such briefs.

Based upon the pleadings, arguments of counsel, the findings of fact and conclusions of law set forth in the Ruling and Order, which Ruling and Order is incorporated herein, and the entire record before the Court, the Court now issues its ruling regarding confirmation of the amended plans.

## I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b).[6] This is a contested matter governed by Federal Rule of Bankruptcy Procedure 9014. The following constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to contested matters by Federal Rules of Bankruptcy Procedure 9014(c) and 7052.

## II. Confirmability of the Amended Plans

### A. The Debtor's Amended Plan

In the Ruling and Order, the Court denied confirmation of the Debtor's plan on the basis that the plan failed to satisfy §§ 1129(a)(5) and 1129(b).[7]

#### 1. Section 1129(a)(5) – Post-Confirmation Management

In the Ruling and Order, the Court found that so long as pre-petition claims remain

---

[6] The Debtor argues that the Court does not have jurisdiction to approve a settlement of the Cinco litigation, like the one proposed in Cinco's Amended Plan, absent the Debtor's consent.
 Pursuant to 28 U.S.C. § 157(b)(1), "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under [§ 157(a)], and may enter appropriate orders and judgments, subject to review under section 158 of [the title 28]."
 Section 1123(b)(3)(A) of the Bankruptcy Code states that "a plan may provide for the settlement or adjustment of any claim or interest belonging to the debtor or to the estate[,]" and pursuant to 28 U.S.C. § 157(b)(2)(L), "confirmations of plans" are core proceedings over which the Court has jurisdiction.
 Further, pursuant to 28 U.S.C. § 157(b)(2)(A), "matters concerning the administration of the estate" are core proceedings. The Skyline Note and the Debtor's claims against Cinco arising from the Skyline Note and related documents are assets of the estate, and as such, the settlement agreement set forth in Cinco's Amended Plan, which proposes to resolve the Debtor's claims against Cinco pertaining to the Skyline loan documents, directly concerns the administration of the estate.
 Based upon the foregoing, the Court has jurisdiction over these proceedings. Even if consent of the Debtor were required, because consent to adjudication by a bankruptcy court need not be express, the Court finds that the Debtor has impliedly consented to this Court's jurisdiction to adjudicate these plan confirmation proceedings and/or waived its jurisdictional argument by failing to raise it in connection with Cinco's proposal of its prior plan, in which plan Cinco likewise proposed to settle the Cinco litigation.

[7] Unless otherwise indicated, statutory references are to the Bankruptcy Code, title 11 of the United States Code.

unresolved and unpaid, Mr. Zarifi's continued management of the Debtor would not be in the best interest of creditors or public policy. The Court determined that in order to satisfy the requirements of § 1129(a)(5), the Debtor's plan would need to be amended to provide the Disbursing Agent[8] with sufficient decision-making authority to address the concerns raised in the Ruling and Order, which concerns pertained to: (1) post-confirmation reporting; (2) control over the Debtor's accounts; (3) which funds would be paid to the Disbursing Agent to distribute to creditors; (4) the sale or refinancing of properties in order to pay claims; (5) the prosecution of pending and future litigation; and (6) the settlement of claims litigation and the pending litigation with Cinco.

The Debtor's Amended Plan provides for a Manager,[9] who would serve until: (a) all allowed claims had been paid through the plan; (b) all objections to Disputed Claims[10] had been resolved by final order and any allowed amounts paid in full; and (c) the Manager had been paid. (DE 627 at § 4.2). Christopher Linscott ("Mr. Linscott"), who is currently employed as the Debtor's accountant and who was the proposed Disbursing Agent under the Debtor's and Cinco's prior plans, has agreed to serve as Manager. (DE 633). There are resignation and removal provisions in the Debtor's Amended Plan, and the appointment of a replacement Manager would be subject to Court approval. (DE 627 at § 4.3). The plan term remains unchanged under the Debtor's Amended Plan, such that there would be no quicker recovery for creditors under the Debtor's Amended Plan, and protracted litigation remains a possibility.

The Debtor's Amended Plan provides in relevant part:

> 4.5 **Manager's Powers and Duties.** The Manager will have the following powers and responsibilities:
>
> a. Complete and exclusive control over all of Debtor's cash, liquid assets, and bank accounts;

---

[8] Unless otherwise indicated, defined terms have the meanings ascribed to them in the Ruling and Order.
[9] As defined in the Debtor's Amended Plan, the "Manager" is "the individual or entity appointed to act as the manager of the Debtor beginning on the Effective Date pursuant to § 4.1 of the [Debtor's Amended] Plan." (DE 627 at § 1.31).
[10] As defined in the Debtor's Amended Plan, "Disputed Claim" means "every Claim that is not an Allowed Claim." (DE 627 at § 1.22).

b. Complete and exclusive authority to make all payments permitted or required under this Plan;

c. Complete and exclusive authority to establish and enforce budgets for the litigation of objections to Disputed Claims and the prosecution of claims or causes of action held by Debtor;

d. Complete and exclusive authority to pay all operating expenses incurred in the ordinary course of Debtor's business on or after the Effective Date of the Plan;

e. Complete and exclusive authority to fund the Disputed Claim Reserve Account;[11]

f. Complete and exclusive authority to prepare and file with the Court any required post-confirmation reports or other documents;

g. Complete authority to communicate with the holders of Claims and Equity Interests[12] concerning the implementation and status of this Plan;

h. Complete authority to take all other actions reasonably necessary to implement this Plan or to operate the routine business of the Debtor, except for actions that require the consent of the Holders of Equity Interests; and

i. The authority to take any of the following actions, subject to consultation with and the express consent of a majority of the holders of Equity Interests of the Debtor, which consent may not be unreasonably withheld. If the Manager believes such consent has been unreasonably withheld, the Manager may file a motion with the Bankruptcy Court requesting an order permitting such action to be taken. After notice to the holders of Claims and Equity Interests and an opportunity to object, the Court may permit the Manager to take such action if it determines that the proposed action is reasonable, is in the best interest of

---

[11] As defined in the Debtor's Amended Plan, the "Disputed Claim Reserve Account" is "a segregated, interest bearing account maintained and administered by the Debtor for the purpose of holding cash for distribution on account of Disputed Claims pursuant to [the Debtor's Amended] Plan." (DE 627 at § 1.23).

[12] As defined in the Debtor's Amended Plan, "Equity Interests" are "the equity interests in the Debtor, all of which are presently held by [Mr.] Zarifi, a married man owning such Equity Interests as his sole and separate property." (DE 627 at § 1.25).

creditors, and is fair and equitable with respect to the holders of Equity Interests:

1. The right to sell, lease, or otherwise dispose of any of Debtor's real or personal property (except for the Cinco Loan Documents[13]) at fair market value;

2. The right to borrow money and to mortgage or encumber any of Debtor's real or personal property, upon terms that are commercially reasonable;

3. The right to negotiate and execute settlements with the holders of Disputed Claims;

4. The right to negotiate and execute settlements with anyone against whom Debtor has a claim or cause of action, except for any claims or causes of action arising out of or relating to the Cinco Loan Documents (which may be settled only in accordance with § 4.6 of this Plan); and

5. The right to engage or terminate professionals outside the ordinary course of Debtor's business.

4.6. **Authority to Compromise Claims Related to Cinco Loan Documents.** At any time within six months from the Effective Date, Manager shall have the authority to settle any claims or causes of action held by Debtor that arise out of or relate to the Cinco Loan Documents, without the consent [of] the holders of Equity Interests, if and only if such settlement would result in payment to Debtor in cash in the amount of at least $5,500,000, to be paid within 30 or fewer days from the execution of the settlement agreement; any settlement of claims arising out of or relating to the Cinco Loan Documents on terms that are less favorable to the Debtor, or which will be consummated more than six months after the Effective Date, shall require the express, written consent of a majority of the holders of Equity Interests.

In addition to the powers and authority expressly given to the Manager in the Debtor's Amended Plan, the Manager would "have such additional rights, powers, and authority the

---

[13] As defined in the Debtor's Amended Plan, the "Cinco Loan Documents" are "the *Loan Agreement* dated July 21, 2006 between Debtor and Cinco; the promissory note dated July 21, 2006 in the original principal amount of $4,000,000, under which Debtor is the lender and Cinco is the borrower; the *Second Deed of Trust and Fixture Filing* dated July 21, 2006 and recorded in the Office of the Pima County Recorder on July 25, 2006 at Docket No. 12853, Page No. 4268; and any amendments to the foregoing."

Bankruptcy Court deems necessary to ensure the proper implementation of this Plan or to protect the rights and interests of creditors and equity security holders under this Plan." (DE 627 at § 4.11).

Cinco and the Cinco Supporters argue that the Debtor's Plan still fails to satisfy § 1129(a)(5) because: (1) it is unclear what standard would apply to guide the Manager's decision-making; (2) Mr. Linscott is being proposed as a shield against § 1129(a)(5) so that Mr. Zarifi can continue to litigate with objecting creditors; (3) the term of the Manager's appointment is ambiguous in that it is possible Mr. Zarifi could be put back into control of the Debtor prior to resolution of the disputes between the Debtor and Cinco; and (4) the Manager's control over the Cinco litigation would be illusory under the Debtor's Amended Plan given that the plan confers upon the Manager only nominal control over the Cinco litigation, with material decisions requiring the consent of Mr. Zarifi or Court approval.

The Debtor counters that: (1) the appointment of Mr. Linscott as Manager is consistent with the interests of creditors and equity holders; (2) the Debtor's Amended Plan gives the Court authority to give the Manager additional rights, powers, and/or authority as necessary; (3) Mr. Linscott would be fully capable of competently performing his duties as a manager under state law and as Manager under the Debtor's Amended Plan; (4) there are safeguards in place under the terms the Debtor's Amended Plan in the event Mr. Linscott were to be deemed an unacceptable Manager; (5) the Debtor's Plan gives the Manager authority to settle all claims if certain conditions are met; (6) the Debtor should not be required to strip Mr. Zarifi of his control over the Debtor after all debts have been paid even if litigation with Cinco is still ongoing, and any such requirement would be an unconstitutional deprivation of Mr. Zarifi's property and due process rights.

Ultimately, it is clear that under the Debtor's Amended Plan, the Manager would not be able to settle any Disputed Claims without Mr. Zarifi's consent or Court approval. This procedure would cause unnecessary delay and expense given that, absent Mr. Zarifi's consent, the Manager would need to file motions to approve settlements of the Disputed Claims, which would most likely be objected to by Mr. Zarifi. In its Ruling and Order, the Court has already determined the

proposed settlements of the Disputed Claims to be fair and equitable, thus making the Debtor's proposed procedure more untenable.[14]

Moreover, the control that the Debtor's Amended Plan purports to give the Manager with respect to the Cinco litigation is illusory. Unless the Manager were to be able to negotiate and execute a $5.5 million settlement of the Cinco litigation to be funded within six months of the Effective Date, the Manager would need Mr. Zarifi's consent in order to settle the Cinco litigation. The Court notes that this minimum settlement amount is greater than the maximum amount that Skyline could collect on the Skyline Note based on the appraised value of the Rancho Soldados Property. Further, the Debtor's Amended Plan does not prohibit Mr. Zarifi from unreasonably withholding his consent to a settlement of the Cinco litigation, nor does it allow the Manager to bring any such settlement before the Court for approval.

In short, under the Debtor's Amended Plan, the Manager would have only nominal authority to settle Disputed Claims and/or the Cinco litigation. Based upon the foregoing, the Debtor has failed to resolve the Court's concerns regarding the post-confirmation management of the Debtor, given Mr. Zarifi's continuing control over the Disputed Claims and the Cinco litigation. As such, the Debtor's Amended Plan fails to satisfy § 1129(a)(5), and is therefore unconfirmable. The Court, therefore, need not determine whether the Debtor has addressed the remaining deficiencies set forth in the Court's Ruling and Order.

### B. Cinco's Amended Plan

In the Ruling and Order, the Court denied confirmation of Cinco's plan on the basis that the plan failed to satisfy §§ 1129(a)(1) and 1129(a)(5). Further, the Court found that Cinco's Plan would satisfy the feasibility requirement in § 1129(a)(11) so long as the Effective Date were to occur within thirty days of the entry of a final order of confirmation.

### 1. Section 1129(a)(1) – Plan Compliance With Code

In the Ruling and Order, the Court found that the proposed settlement of the Cinco

---

[14] The Court will note that after the Debtor's Amended Plan was filed, the Debtor proposed settlements and a conditional withdrawal of a claim objection with respect to certain of the Disputed Claims. (DE 642; DE 672; DE 703; *see also* DE 661; DE 683; DE 688). To date, none of the proposed settlements nor the conditional withdrawal has been approved, and even if such settlements and conditional withdrawal were to be approved, not all Disputed Claims would be resolved.

litigation, which settlement proposed to pay the Debtor the principal balance on the Skyline Note: (1) did not sufficiently account for the possibility that the Debtor could prevail in litigation in part; and (2) was ambiguous as to whether Mr. Sheafe had agreed to waive his right, if any, to interest under the Sheafe Note or his right to pro rata payment of the Sheafe Note. For these reasons, the Court found that the settlement, as proposed, was not sufficiently clear or fair and equitable.

The Court determined that a modification of the settlement that provided clarification and provided for additional consideration from Cinco to Skyline would be required to find the settlement to be fair and equitable.[15] The Court explained that a modification of the settlement would need to provide Skyline with full recovery of principal on the Skyline Note and of Mr. Zarifi's capital contribution, plus additional consideration, before Mr. Sheafe would be able to recover any payment on the Sheafe Note or recover any of his additional contributions to Cinco.

Under Cinco's Amended Plan: (1) Cinco would provide Skyline with full recovery of principal on the Skyline Note, applying all payments to principal; (2) Mr. Sheafe would subordinate payment on the Sheafe Note to the extent of $250,000, without interest, to be paid to Mr. Zarifi as a return of his initial capital contribution; (3) Cinco would bring the real estate taxes on the Rancho Soldados Property current on the Effective Date; (4) Mr. Sheafe would waive his right under the First Amendment to pro-rata payment on the Sheafe Note; (5) Mr. Sheafe would waive his right to interest on the Sheafe Note; and (6) Cinco would immediately cause completion of a cul de sac on the Rancho Soldados Property, which Cinco argues would significantly benefit Cinco, and by implication Mr. Zarifi. (DE 632 at § IV.A).

The Debtor argues that the settlement, as amended, is not fair and equitable, and does not provide any additional consideration from Cinco to Skyline or from Cinco to Mr. Zarifi that Cinco is not already obligated to pay. Specifically, the Debtor argues that: (1) Cinco is already required to pay all real property taxes under the Skyline Deed of Trust, and that, in any event, the

---

[15] The Court will note that any additional consideration, whether from Cinco to Skyline, Cinco to Mr. Zarifi, or Mr. Sheafe to Mr. Zarifi would ultimately solely benefit and flow to Mr. Zarifi given that the principal balance owing on the Skyline Note would be sufficient to pay all claims in full and given that Mr. Zarifi is the sole member of the Debtor. Similarly, any value added to Cinco or the Rancho Soldados Property would benefit Mr. Zarifi as a member of Cinco.

Debtor would not benefit from the payment of real estate taxes because under Cinco's Amended Plan, the Skyline Deed of Trust would be released and the Debtor would no longer have any interest in the Rancho Soldados Property; (2) the Debtor would not receive any benefit from Mr. Sheafe's waiver of any rights pertaining to his loan, and that in any event, the Sheafe Note is unenforceable, any claims to enforce the First Amendment are time-barred, and Mr. Sheafe's testimony regarding the accrual of interest on the Sheafe Note was either false or cannot constitute additional consideration; (3) Cinco has failed to provide any evidence as to when, if ever, Mr. Zarifi would be paid anything on account of his equity contributions; (4) Cinco and its equity holders are already required to contribute the funds necessary to develop the Rancho Soldados Property, and such development would provide no benefit to the Debtor; (5) Cinco has failed to satisfy the Court's requirement that Mr. Zarifi's capital contributions be repaid prior to any payments to Mr. Sheafe; and (6) the dollar amount is not fair and equitable.

Mr. Zarifi contends that the amended settlement does nothing to compensate him for the loss of revenue and diminution of the value of his interest in Cinco, and would improperly require him to release claims against Mr. Sheafe and the Sheafe Trust.

In addition to joining in the arguments made by the Debtor, Fotinos argues that at least until all of the Debtor's creditors are paid in full, it would not be proper for a claim owned by the Debtor to be compromised in exchange for payments to Mr. Zarifi personally.

Cinco and the Cinco Supporters argue that the Debtor is ignoring the Court's conclusion that Mr. Zarifi and the Debtor are and have been alter egos and maintain that Cinco's Amended Plan sufficiently proposes a return of Mr. Zarifi's initial capital contribution in compliance with the Ruling and Order.

As previously noted by the Court, the settlement proposed by Cinco is in the best interest of the creditors of Skyline in that the funds to be paid to Skyline, in the approximate amount of $2,793,959, are sufficient to promptly pay all allowed administrative, secured, non-insider unsecured, and insider unsecured claims in full. The only party that could be negatively impacted by the proposed settlement is the sole equity holder, Mr. Zarifi. Under the proposed settlement, as amended, Mr. Zarifi remains the sole member of a reorganized Skyline, which will have assets

including in excess of $1.7 million in cash and in excess of $3.8 million in unencumbered real property. Mr. Zarifi will also retain his 43% interest in Cinco.

The settlement, as amended, further provides and clarifies that Mr. Sheafe waives his claim to interest on the Sheafe Note, waives his claim to pro-rata payment of the Sheafe Note with the Skyline Note, and subordinates any payment on the Sheafe Note to the extent of Mr. Zarifi's $250,000 initial capital contribution.[16] Cinco's Amended Plan also provides that Cinco will not make any distributions to its members until the $250,000 is paid to Mr. Zarifi. Further, while Cinco's payment of the real property taxes on the Rancho Soldados Property and the completion of the cul de sac in the Rancho Soldados Property may not directly benefit Skyline, it clearly benefits Mr. Zarifi, the sole member of Skyline and a member of Cinco.

Contrary to Mr. Zarifi's assertion that he would be required to release his claims against Mr. Sheafe and the Sheafe Trust under Cinco's Amended Plan, the proposed settlement, as amended, does not alter or modify any of Mr. Zarifi's rights as against Mr. Sheafe or the Sheafe Trust. Further, Cinco's Amended Plan expressly provides that except as specifically provided therein, "nothing in [Cinco's Amended] Plan shall affect the rights or liabilities of Chris Sheafe or his affiliates, and Ahmad Zarifi or his affiliated (other than Skyline), with respect to Cinco Soldados. This means, without limitation, that each of Messrs. Zarifi and Sheafe retain their membership interests in and personal claims against Cinco Soldados." (DE 632 at § IV.A).

Ultimately, the issue before the Court is whether the additional consideration Cinco and Mr. Sheafe have proposed is sufficient to render the settlement fair and equitable. Given the uncertainty and cost of protracted litigation between Cinco and Skyline, given the fact that the settlement will promptly pay all allowed claims in the Skyline case, and based upon the additional consideration discussed above, which additional consideration significantly benefits Mr. Zarifi, and upon consideration of the *In re A & C Properties* factors, the Court finds that the settlement, as amended, is fair and equitable, and "compares favorably with the expected rewards of

---

[16] The Court's requirement in the Ruling and Order that a modification of the settlement of the Cinco litigation would need to provide for payment of Mr. Zarifi's capital contribution was a requirement that the settlement be modified to provide for payment of Mr. Zarifi's initial $250,000 capital contribution, only.

litigation." *Grief & Co. v. Shapiro (In re W. Funding, Inc.)*, 550 B.R. 841, 851 (B.A.P. 9th Cir. 2016). It is the determination of the Court that Cinco has satisfied the concerns raised in the Ruling and Order pertaining to the Cinco settlement, and Cinco's Amended Plan therefore satisfies the provisions of § 1129(a)(1).

### 2. Section 1129(a)(5) – Post-Confirmation Management

In the Ruling and Order, the Court required Cinco to address and/or clarify the following provisions in its plan that appeared to the Court to be inconsistent with the role of the Disbursing Agent under Cinco's plan:

- § IV.D, which provided that Mr. Sheafe and Mr. Zarifi would agree on causes of action that would not be deemed released;
- § IV.F, which provided that post-Effective Date, only the reorganized Debtor and Cinco would have the authority to resolve claims;
- § IV.J, which provided that Mr. Sheafe or officers of the reorganized Debtor would be authorized to take actions necessary to effectuate Cinco's plan;
- § V.E, which provided that Cinco or the reorganized Debtor would be able to move the Court for an order estimating any disputed claim;
- § V.F, which would have given authority to the reorganized Debtor and Cinco with respect to claims bar date issues;
- § VI.B, which would have given claim settlement authority to the reorganized Debtor and Cinco;
- § VI.C, which would have granted the reorganized Debtor authority with respect to setoffs;
- § VI.D, which only provided exculpation and limitation of liability to the reorganized Debtor and Cinco;
- § VIII.A.16, which section provided that after the Effective Date only the reorganized Debtor would have authority to object to claims and interests; and
- § VIII.A.22, which section provided for distributions on the Effective Date by the reorganized Debtor.

Cinco has addressed all of the above issues in its amended plan, and no party has asserted otherwise.[17]

### 3. Section 1129(a)(11) – Feasibility

The Court determined that Cinco's plan would meet the requirements of § 1129(a)(11) provided that the Effective Date were to occur within thirty days of entry of a final order of confirmation.

Cinco's Amended Plan provides that "[i]f the Effective Date does not occur within 30 days after termination of the stay of the Confirmation Order, the Confirmation Order shall be vacated and of no further effect." (DE 632 § H.3).

This language in Cinco's Amended Plan is consistent with the Court's Ruling and Order, and Cinco's Amended Plan satisfies § 1129(a)(11).[18]

**C.** **Section 1129(c)**

Given that the Court has determined that only Cinco's Amended Plan is confirmable, it is not necessary for this Court to engage in a § 1129(c) analysis.

## III. Conclusion

Based upon the foregoing, and the totality of the evidence presented in this case, the Court finds and concludes that the Debtor has failed to meet its burden of establishing that the Debtor's Amended Plan satisfies the provisions of § 1129(a)(5), and is therefore not confirmable. On the other hand, Cinco has met its burden of establishing that, with minor clarifications, as set forth above, Cinco's Amended Plan satisfies the provisions of §§ 1129(a)(1) and (a)(5), as well as all

---

[17] In addition to the § 1129(a)(5) issues discussed above, the Court noted in the Ruling and Order that it was unclear whether the Disbursing Agent would supplant the Debtor and Cinco in the claim distribution process with respect to the Stachowski/Stromberg settlement. Although no party addressed this issue in the briefing, it does not appear as if this ambiguity has been resolved in Cinco's Amended Plan. To the extent this was an oversight, and Cinco's intent was to give the Disbursing Agent the authority over the release of funds pursuant to the Stachowski/Stromberg settlement, this clarification would need to be included in an order confirming Cinco's Amended Plan.

[18] The Court will, however, require any confirmation order to expressly provide that the requirement that the Initial Settlement Payment, calculated as the unpaid principal balance of the Skyline Note, applying all payments to principal, be paid in full via cash or wire transfer to the Disbursing Agent prior to the Effective Date may not be waived.

other applicable provisions of § 1129, as set forth in the Ruling and Order, and will thus be confirmed by the Court.

The foregoing constitutes the Court's ruling with respect to confirmation of the competing plans, as amended. Counsel for Cinco may lodge a form of order consistent with this Memorandum Decision, which also provides the supplemental clarification required by footnotes 17 and 18 of this decision.

**DATED AND SIGNED ABOVE.**