THIS ORDER IS APPROVED.

Dated: March 15, 2021

Brenda Moody Whinery, Chief Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SKYLINE RIDGE, LLC,<br><br>            Debtor(s). | Chapter 11<br><br>Case No. 4:18-bk-01908-BMW<br><br>**RULING AND ORDER REGARDING:**<br>**(1) DEBTOR'S MOTION TO DETERMINE (Dkt. 766); AND**<br>**(2) CINCO SOLDADOS LLC'S MOTION TO ENFORCE (Dkt. 769)** |

      Before the Court are the *Motion to Determine That Effective Date Under Cinco Plan Has Not Occurred and to Rescind Confirmation Order; and Alternative Motion for Revocation of Confirmation Order* (the "Debtor's Motion") (Dkt. 766) filed by Skyline Ridge, LLC (the "Debtor" or "Skyline") on February 26, 2021; the *Motion to Enforce Cinco's Plan* ("Cinco's Motion") (Dkt. 769) filed by Cinco Soldados LLC ("Cinco") on March 1, 2021; and all joinders,[1] responses,[2] and filings related thereto.

      In the Debtor's Motion, the Debtor asks the Court to determine that Cinco failed to timely satisfy the conditions precedent to the Effective Date of the *Second Modified Cinco Plan of*

---

[1] Specifically, the *Sami Zarifi, Sami Zarifi 14 LLC and Willpower Properties, LLC Joinder in Debtor's Motion to: (1) Determine That Effective Date Has Not Occurred and to Rescind Confirmation Order; and Alternative Motion for Revocation of Confirmation; and [ECF 766] (2) Set Expedited Hearing on Accelerated Notice Regarding Item #1 Above [ECF 767]* (Dkt. 770); and the *Joinder in Motion to Enforce Cinco's Plan* (Dkt. 776) filed by David Parri, Paula Stachowski, Daniel Stromberg, Earth's Healing, Inc., Vicky Puchi-Saavedra, and Eduardo Saavedra.

[2] Specifically, the *Response to Debtor's Motion to Determine that Effective Date Under Cinco Plan Has Not Occurred and to Rescind Confirmation Order; and Alternative Motion for Revocation of Confirmation Order* (Dkt. 778) filed by Cinco; and the *Response to Cinco Soldados, LLC's Motion to Enforce Plan* (Dkt. 779) filed by the Debtor.

*Reorganization Dated September 2018* (Dkt. 632), as amended and modified by the *Notice of Errata in Second Modified Cinco Plan of Reorganization Dated September 18, 2018, Filed July 16, 2020* (Dkt. 634), the *Second Notice of Errata in Second Modified Cinco Plan of Reorganization Dated September 18, 2018, Filed July 16, 2020* (Dkt. 652), and certain settlement agreements[3] (collectively, the "Cinco Plan"), such that the *Confirmation Order* (the "Confirmation Order") (Dkt. 709) is rescinded by the terms of the Cinco Plan. In the alternative, the Debtor's Motion moves for revocation of the Confirmation Order.

In Cinco's Motion, Cinco asserts that the conditions to the effectiveness of the Cinco Plan were timely satisfied and that the Effective Date of the plan was February 19, 2021. Cinco asks the Court to enforce the Confirmation Order and Cinco Plan by entering an order directing the Disbursing Agent[4] to execute his duties under the Confirmation Order and the Cinco Plan.

The Court held expedited hearings on the Debtor's Motion and Cinco's Motion on March 10, 2021, at which time counsel for the Debtor, counsel for Cinco, and counsel for other interested parties presented argument.[5] At the conclusion of the hearings, the Court took the matter under advisement. Based upon the record before the Court, the Court now issues its ruling.[6]

I. **Issues**

The issues before the Court are:

1. Whether and to what extent the Court has jurisdiction to consider the relief requested in the Debtor's Motion and Cinco's Motion.

2. Whether the conditions to the Effective Date of the Cinco Plan were timely satisfied.

---

[3] Specifically, the *Settlement Stipulation and Plan Modification Concerning Homeowners Association Claims* (Dkt. 266); the *Settlement Stipulation and Plan Modification Concerning Pima County Claims* (Dkt. 273); the *Settlement Stipulation and Plan Modification Concerning Trustee of RL Ventures, LLC* (Dkt. 285); the *Settlement Stipulation and Plan Modification Concerning David Parri Claim* (Dkt. 289); the *Settlement Stipulation and Plan Modification Concerning Claims of Earth's Healing, Inc. and Vicky Puchi-Saavedra Eduardo Saavedra* (Dkt. 293); and the *Settlement Stipulation and Plan Modification Concerning Paula Stachowski and Daniel Stromberg Claims* (Dkt. 531).

[4] Defined in the Cinco Plan as "Christopher Linscott or any successor appointed by the Court on the motion of Reorganized Debtor or Cinco in the event Mr. Linscott resigns or is unavailable." (Dkt. 632 at §VIII.A.27).

[5] No request for an evidentiary hearing was made at the March 10, 2021 hearings.

[6] The Court is issuing one ruling dealing with both the Debtor's Motion and Cinco's Motion as the issues presented are essentially the same, albeit presented from opposing sides.

3. Whether there is a basis for revocation of the Confirmation Order.

## II. Factual Background & Procedural Posture

On March 1, 2018, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thus commencing this case.

On September 20, 2018, the Court entered an order terminating the Debtor's exclusivity to file a plan of reorganization. (Dkt. 160). Thereafter, Cinco filed a competing plan and disclosure statement. Cinco's *Notice of Submission of Amended Disclosure Statement for Cinco Plan of Reorganization Dated September 18, 2018* (the "Cinco Disclosure Statement") (Dkt. 217) set forth a compromise between Cinco and the Debtor that would be used to fund Cinco's plan. The Cinco Disclosure Statement anticipated that the settlement funds would be obtained via two loans secured by the Rancho Soldados Property[7]: one from a commercial bank and the other from a private lender. (Dkt. 217 at 29). According to the Cinco Disclosure Statement, both loans had been tentatively approved by each lender on the condition that the Skyline Deed of Trust be released and each loan be secured by a first position deed of trust on certain of the Rancho Soldados Property lots. (Dkt. 217 at 29). The Cinco Disclosure Statement cautioned that, from Cinco's perspective, "lenders do not write binding loan commitments, much less indefinitely binding loan commitments, but the understanding in principle ha[d] been reached, and the necessary appraisals ordered or obtained." (Dkt. 217 at 29).

The Court approved the Cinco Disclosure Statement as containing adequate information in compliance with § 1125.[8] (Dkt. 221). No party sought to set aside or modify the Court's order approving the Cinco Disclosure Statement.

The initial plan filed by Cinco provided that Cinco would tender a settlement payment to the Debtor in exchange for mutual releases, the release of all liens and claims on the Rancho Soldados Property, and the dismissal of all pending actions without prejudice. (Dkt. 163 at § IV.A). The initial plan did not specify or impose conditions with respect to the source of funding

---

[7] Unless otherwise indicated, defined terms have the meaning ascribed to them in the *Ruling and Order Regarding Plan Confirmation* (Dkt. 620) and *Memorandum Decision Regarding Confirmation of Amended Plans of Reorganization* (Dkt. 706).

[8] Unless otherwise indicated, statutory references are to the Bankruptcy Code, title 11 of the United States Code.

for the proposed settlement. (*See* Dkt. 163).

The Debtor objected to Cinco's initial plan on the basis that, among other things, the proposed settlement between it and Cinco was unfair and unreasonable in violation of § 1129(a)(1), and Cinco had not demonstrated that it had the funds available to implement its plan, thereby failing to satisfy the feasibility requirements set forth in § 1129(a)(11).

The Court held a contested confirmation hearing on the competing plans that began in December 2019 and concluded in April 2020. During the contested confirmation hearing, Mr. Zarifi testified as to his concerns that in connection with Cinco's plan, Mr. Sheafe would cause Cinco to obtain a private loan from a friendly lender, permit Cinco to default on the loan, and allow the lender to foreclose on the Rancho Soldados Property, thereby eliminating the value of Mr. Zarifi's 43.53% equity interest in Cinco. (12/18/2019 Hearing Tr. 172:22-174:4; 1/16/2020 Hearing Tr. 55:13-57:5, 84:2-86:1). Mr. Sheafe testified that Foothills Bank, not a private hard money lender, was the lender he believed Cinco would use to fund its plan. (2/6/2020 Hearing Tr. 82:25-83:3, 112:8-14, 180:11-13). Mr. Sheafe testified that there was no agreement to let the bank foreclose, and that he would not personally benefit if the new lender were to foreclose. (2/6/2020 Hearing Tr. 87:16-24, 180:11-22). He further testified that Cinco would be ready to fund its plan within 30 days from confirmation. (2/6/2020 Hearing Tr. 83:3-6).

On June 10, 2020, the Court issued a *Ruling and Order Regarding Plan Confirmation* (the "Ruling and Order") (Dkt. 620), in which the Court denied confirmation of the competing plans, but granted the parties leave to amend their respective plans to rectify the deficiencies set forth in the Court's Ruling and Order.

In the Court's analysis of the compromise between Cinco and the Debtor proposed in Cinco's plan, the Court found and concluded in relevant part:

> Contrary to Mr. Zarifi's assertions that this compromise is a ploy by Mr. Sheafe to forcibly strip Mr. Zarifi of his interest in Cinco by allowing or enabling the lender who funds the Cinco Settlement to promptly foreclose upon the Rancho Soldados Property, there is no evidence that this is the intended outcome or even a probable outcome of the compromise. Mr. Zarifi himself has acknowledged that his belief in this outcome is premised on there being a private lender funding the Cinco Settlement. Although

> Cinco's Disclosure Statement contemplated that the Cinco settlement would be funded by two loans, one a commercial bank loan and the other privately funded, there is nothing in Cinco's [p]lan that provides for a private lender, and Mr. Sheafe testified that the proposed lender is Foothills Bank, a commercial lender.
>
> Further, as Mr. Zarifi acknowledged, if there is a foreclosure by any lender on the Rancho Soldados Property, Mr. Sheafe, who holds a majority ownership interest in Cinco, and who has proposed to personally guarantee this new loan, would lose his majority interest in Cinco, remain personally liable on his personal guarantee, and lose the approximate $6.7 to $6.8 million he has invested in Cinco. There would be no economic advantage for Mr. Sheafe, individually or as manager of Cinco, to cause a lender to foreclose upon the Cinco Soldados Property, and Mr. Sheafe acknowledged as much.
>
> Upon consideration of the foregoing, the majority of the *In re A & C Properties* factors weigh in favor of the settlement . . . . The Cinco settlement, however, only proposes to pay Skyline the principal balance on the Skyline Note, which does not sufficiently account for the possibility that Skyline could prevail in part. The proposed settlement is also ambiguous as to whether Mr. Sheafe has agreed to waive his right, if any, to interest under the Sheafe Note or his right to pro rata payment of the Sheafe Note. For these reasons, the Court does not find that the settlement as proposed by Cinco is sufficiently clear or fair and equitable.
>
> It is the Court's determination that a modification of the settlement, which clarifies the foregoing and provides for additional consideration from Cinco to Skyline would be required to find the settlement to be fair and equitable. Such modification would provide Skyline with full recovery of principal on the Skyline Note and of Mr. Zarifi's capital contribution, plus additional consideration, before Mr. Sheafe would be able to recover any payment on the Sheafe Note, or recover any of his additional contributions to Cinco.

(Dkt. 620 at 52-54) (internal citations and footnotes omitted).

With respect to feasibility, in the Ruling & Order, the Court found and concluded as follows:

> Cinco proposes to fund its plan using the proceeds from the Cinco settlement, which proceeds Cinco proposes to tender in one lump sum. In order to make the settlement payments, Mr. Sheafe

> testified that Cinco had arranged to obtain a loan secured by the Cinco Soldados Property, and guaranteed by Mr. Sheafe. Mr. Sheafe testified that funding of the loan could occur within thirty (30) days of plan confirmation. Cinco's counsel confirmed this during closing arguments.
>
> Although no written commitment or other supporting documentation was introduced into evidence, the Court finds Mr. Sheafe to be credible, and the Court finds Mr. Sheafe's testimony sufficient to satisfy Cinco's relatively low burden of proving that its plan is feasible.
>
> It is the determination of the Court that Cinco's Plan meets the requirements of § 1129(a)(11), so long as the Effective Date occurs within thirty (30) days of entry of a final order of confirmation.

(Dkt. 620 at 64-65) (internal citations omitted).

Thereafter, the Debtor filed an amended plan and Cinco filed the Cinco Plan.

The Cinco Plan amends the terms of the compromise between the Debtor and Cinco. (*Compare* Dkt. 163 at § IV. A *with* Dkt. 632 at § IV.A). The Cinco Plan provides in relevant part that "[i]n consideration of receipt of the Initial Settlement Payment [calculated as 'the unpaid principal balance of the Skyline Note, applying all payments to principal . . .'] on the Effective Date, Debtor and Cinco shall exchange mutual releases, dismiss all pending actions without prejudice, . . . and Debtor shall release all liens and claims upon property of Cinco." (Dkt. 632 at § IV.A). The compromise, as amended, also provides for additional consideration from Cinco and Mr. Sheafe to Skyline and/or Mr. Zarifi, consistent with the Ruling and Order. (Dkt. 632 at § IV.A).

With respect to the conditions to the effectiveness of the Cinco Plan, the Cinco Plan provides:

> **1. Conditions.**
> The Cinco Plan shall not become binding unless and until the Effective Date occurs. The Effective Date is the first Business Day (a) that is at least 14 days after the Confirmation Date [defined as "the date the Confirmation Order is entered on the docket of the clerk of the Court"]; (b) on which no stay of the Confirmation Order is in effect; (c) no request for revocation of the Confirmation Order under Code § 1144 shall have been made, or, if made, shall remain

pending; and (d) on which all of the following conditions have been satisfied or waived by Cinco:
1. The Bankruptcy Court shall have approved a Disclosure Statement with respect to this Plan;
2. The Confirmation Order shall be in form and substance acceptable to Cinco;
3. Any outstanding fees of the United States Trustee under 28 U.S.C. § 1930 have been paid in full;
4. Cinco has paid the Initial Settlement Payment via cash or wire transfer to the Disbursing Agent;
5. All other agreements, writings and undertakings required under the Cinco Plan shall be executed and ready for Consummation.

**2. Waiver of Conditions**

The conditions to the occurrence of the Effective Date, as specified above, may be satisfied may be waived in whole or in part, and the time within which any such conditions must be satisfied may be extended, by the written direction of Cinco. The failure to satisfy or waive any of such conditions may be asserted by Cinco regardless of the circumstances giving rise to the failure of such condition to be satisfied, including any action or inaction by Cinco. Cinco's failure to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right shall be deemed ongoing and assertable at any time.

**3. Failure of Conditions.**

If the Effective Date does not occur within 30 days after termination of the stay of the Confirmation Order, the Confirmation Order shall be vacated and of no further effect.

(Dkt. 632 at § IV.H & Dkt. 634).

On November 16, 2020, the Court issued its *Memorandum Decision Regarding Confirmation of Amended Plans of Reorganization* (the "Memorandum Decision") (Dkt. 706), in which the Court determined that the Cinco Plan alone satisfied the requirements for confirmation and would therefore be confirmed by the Court. In the Memorandum Decision, the Court did not make any additional findings or impose any conditions pertaining to the source of the funding of the Initial Settlement Payment.

On November 20, 2020, the Court entered the Confirmation Order. The Confirmation Order provides in relevant part:

> **Deadline.** The Initial Settlement Payment, calculated as the unpaid principal balance of the Skyline Note, applying all payments to principal, is to be paid in full via cash or wire transfer to the Disbursing Agent prior to the Effective Date. Cinco shall not have the authority to waive or modify this deadline.
>
> **Action by Debtor.** Any action required by Debtor or Reorganized Debtor under Cinco's Amended Plan or this Order shall be undertaken by Skyline Ridge, LLC, through Ahmad Zarifi its sole member and manager. If Debtor fails to take any action within two business days after written notice from Cinco's counsel, as provided by Bankruptcy Code § 1142(b), the Disbursing Agent is granted an irrevocable special power of attorney and authorized by this Order to execute, deliver, or join in the execution or delivery of any instrument required to effect a transfer of property dealt with by Cinco's Amended Plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of Cinco's Amended Plan.

(Dkt. 709 at 2-3).

The Debtor and Mr. Zarifi appealed the Confirmation Order, both with respect to the Court's confirmation of the Cinco Plan and with respect to the Court's denial of confirmation of the Debtor's plan. (Dkts. 718 & 735).

On November 24, 2020, the Debtor filed a motion for a stay pending the outcome of the appeal. (Dkt. 710). This Court denied the Debtor's motion, but stayed the Confirmation Order pending resolution of the motion for a stay pending appeal filed by the Debtor with the United States Bankruptcy Appellate Panel for the Ninth Circuit (the "BAP"). (Dkt. 733).

On January 22, 2021, the BAP issued an order denying the Debtor's motion for a stay pending appeal. (Dkt. 752 at Ex. 1).

The appeal of the Confirmation Order remains pending before the BAP.

It is the Debtor's position that the stay of the Confirmation Order imposed by this Court terminated on January 22, 2021, when the BAP entered its order denying the Debtor's motion for a stay pending appeal. (Dkt. 756 at 1). Cinco does not challenge this date as the date to be used for purposes of calculating the deadlines in the Cinco Plan and Confirmation Order.

On February 19, 2021, Cinco filed a *Notice of Effective Date of Cinco's Amended Plan*

(the "Notice of Effective Date") (Dkt. 760), in which Cinco gave notice that the Effective Date occurred on February 19, 2021, based upon the fact that on that date the Initial Settlement Payment was wired and received by the Disbursing Agent, and Cinco determined that the remaining conditions to the effectiveness of the Cinco Plan were satisfied. The Debtor objected to the Notice of Effective Date. (Dkt. 762). There is, however, no dispute that on February 19, 2021, Cinco made a transfer in the amount of $2,654,942 to the Disbursing Agent. (Dkts. 762 at 3; Dkt. 766 at 10 & Ex. F; Dkt. 769 at 2). Further, the Debtor does not dispute that the $2,654,942 wired to the Disbursing Agent was accurately calculated and represents the Initial Settlement Payment. Rather, the Debtor takes issue with the source used to fund the Initial Settlement Payment.

It is the Debtor's position that the funding of the Initial Settlement Payment did not timely occur because the source of the funding was a private lender. The Debtor argues that in the Ruling and Order, the Court held that the Cinco Plan does not provide for a private lender, and that this holding formed the basis for the Confirmation Order. The Debtor also takes issue with the terms of the financing and argues that Cinco's operating agreement prohibited Mr. Sheafe from entering into the loan agreement. It is the Debtor's position that the loan was not authorized, and therefore Cinco failed to timely satisfy the conditions precedent to its plan going effective.

It is Cinco's position that neither the Confirmation Order nor the Cinco Plan says anything about the source of funds to be used to make the Initial Settlement Payment, and that the Debtor's arguments pertaining to the funding of the loan to Cinco and allegations of breach of Cinco's operating agreement are irrelevant to the matter before the Court. Cinco argues that by its actions, the Debtor has improperly obtained a stay pending appeal without a court order and is manufacturing defaults under the Cinco Plan.

According to Cinco, during the time between the contested confirmation hearing and the entry of the BAP order denying the Debtor's motion for a stay pending appeal, Foothills Bank advised Mr. Sheafe that it was no longer making land loans given the market, in light of the COVID-19 pandemic.

In order to make the Initial Settlement Payment, Cinco represents that Mr. Sheafe obtained

a personal loan from Notre Dame Federal Credit Union ("Notre Dame") and advanced the proceeds to his company Elkhorn Lending LLC, which loaned the funds to Cinco on an unsecured basis (the "Elkhorn Loan"). Cinco has represented that the Elkhorn Loan was necessary because the Debtor refused to agree to a contemporaneous release of the Skyline Deed of Trust upon receipt of the Initial Settlement Payment. Cinco asserts that in this current market, obtaining bank funding for a loan to a real estate entity whose property is subject to a disputed lien, as is the case for Cinco, is impossible. Cinco asserts that the Elkhorn Loan is an unsecured bridge loan, and represents that it is its intent to replace the Elkhorn Loan with a loan from an institutional lender upon release of the Skyline Deed of Trust.

At this juncture, the Disbursing Agent is holding the Initial Settlement Payment pending further Court order. Pursuant to the Cinco Plan, distributions to creditors are to begin on the first business day after the Effective Date funds are available for distribution. (Dkt. 632). The Skyline Deed of Trust remains in place, but a release may be executed by the Disbursing Agent pursuant to the terms of the Cinco Plan and Confirmation Order.

To the extent the Effective Date occurred under the Cinco Plan, the Debtor alternatively moves the Court to revoke the Confirmation Order pursuant to § 1144, on the basis that it was procured by fraud. The Debtor cites to Mr. Sheafe's testimony and Cinco's disclosure regarding the source of the funding for Cinco's plan as the basis for its fraud claim. Cinco denies the fraud allegations and argues that the Debtor has not alleged and cannot prove the elements of fraud.

**III. Legal Analysis**

    **A. Jurisdiction**

The parties do not challenge this Court's jurisdiction to determine whether the Effective Date has occurred under the Cinco Plan or to determine whether there are grounds to revoke the Confirmation Order. However, the Court has an obligation to determine whether it has jurisdiction to adjudicate the issues before it, even absent a jurisdictional challenge from a party in interest. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Proceedings to interpret or enforce confirmation orders are core proceedings. 28 U.S.C. §§ 1334(b) & 157(b); *see also Gray v. CPF Assocs. LLC*, 614 B.R. 96, 105 (D. Ariz. 2020).

Further, in section VII.O, the Cinco Plan provides in pertinent part that this Court retains jurisdiction to:

> 4. Ensure that distributions to holders of Allowed Claims, including but not limited to Administrative Claims, are accomplished pursuant to the provisions of the Cinco Plan;
>
> 5. Resolve any and all applications, motions, adversary proceedings, and other matters involving Debtor, the Disbursing Agent or the Reorganized Debtor that may be pending on the Effective Date or that may be instituted thereafter in accordance with the terms of the Cinco Plan;
>
> 6. Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Cinco Plan and all contracts, instruments, releases, and other agreements or documents entered into in connection with the Cinco Plan;
>
> 7. Resolve any and all controversies, suits, or issues that may arise in connection with the Consummation, interpretation, or enforcement of the Cinco Plan or any entity's rights or obligations in connection with the Cinco Plan;
>
> . . .
>
> 11. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with Consummation or enforcement of the Cinco Plan, or violation of Plan injunctions;
>
> . . .
>
> 13. Determine any other matters that may arise in connection with or relate to the Cinco Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Cinco Plan or the Disclosure Statement;
>
> . . . .

(Dkt. 632 at § VII.O).

That being said, the Confirmation Order is on appeal. "The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *In re Marino*, 234 B.R. 767, 769 (B.A.P. 9th Cir. 1999) (quoting *Trulis v. Barton,* 107 F.3d 685, 694-95 (9th Cir. 1995)); *see also In re Mirzai*, 236 B.R. 8, 10 (B.A.P. 9th Cir. 1999). In the bankruptcy

context, "[a] pending appeal divests a bankruptcy court of jurisdiction to vacate or modify an order which is on appeal." *Marino*, 234 B.R. at 769. The bankruptcy court cannot interfere with the appellate process or the appellate court's jurisdiction. *Id.* (quoting *In re Hagel*, 184 B.R. 793, 798 (B.A.P. 9th Cir. 1995)). However, the bankruptcy court retains jurisdiction to implement or enforce the order on appeal, provided there is no stay in effect. *Id.* (quoting *Hagel*, 184 B.R. at 798); *Mirzai*, 236 B.R. at 10. Thus, the bankruptcy court must make a distinction between actions to enforce the order or judgment on appeal, which actions are permissible, and actions to expand upon or alter the order or judgment on appeal, which actions are impermissible. *Marino*, 234 B.R. at 770; *Mirzai*, 236 B.R. at 10.

Based upon the foregoing, it is the determination of this Court that it retains jurisdiction to interpret and enforce the Confirmation Order, but lacks jurisdiction to modify or revoke the Confirmation Order. The Court will therefore exercise its core jurisdiction to determine whether the Effective Date of the Cinco Plan occurred, and, if so, the relief necessary to enforce the Cinco Plan. Further, the Court will consider the Debtor's alternative request that the Court revoke the Confirmation Order in accordance with Federal Rule of Bankruptcy Procedure 8008(a).[9]

**B.      Whether the Effective Date Occurred Under the Cinco Plan**

Pursuant to § 1141(a), the provisions of a confirmed plan bind the debtor, creditors, and equity security holders regardless of whether the claims or interests thereof were impaired, and regardless of whether such parties accepted the plan.

Section 1142 provides:

> (a) Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court.
>
> (b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of

---

[9] Pursuant to Federal Rule of Bankruptcy Procedure 8008(a): "If a party files a timely motion in the bankruptcy court for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the bankruptcy court may: (1) defer considering the motion; (2) deny the motion; or (3) state that the court would grant the motion if the court where the appeal is pending remands for that purpose, or state that the motion raises a substantial issue."

> any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

Ultimately, as set forth above, neither the Cinco Plan nor the Confirmation Order impose any conditions on the source of funding of the Initial Settlement Payment. Further, there are no ambiguities in the Cinco Plan or Confirmation Order pertaining to the issue before the Court for the Court to interpret. The only conditions imposed by the Cinco Plan and the Confirmation Order with respect to the funding of the Initial Settlement Payment were that the Initial Settlement Payment "be paid in full via cash or wire transfer to the Disbursing Agent prior to the Effective Date[,]" and that the Effective Date "occur within 30 days after termination of the stay of the Confirmation Order[.]" (Dkt. 709 at 2; Dkt. 632 at § IV.H.3).

The Debtor asserts, and Cinco does not dispute, that the stay of the Confirmation Order imposed by this Court terminated on January 22, 2021, the date the BAP entered its order denying the Debtor's motion for a stay pending appeal, and no other court has otherwise imposed a stay of the Confirmation Order. There is no dispute that the Initial Settlement Payment was wired to and received by the Disbursing Agent 28 days thereafter, on February 19, 2021. Thus, the Initial Settlement Payment was timely remitted.

With respect to the other conditions precedent to the Cinco Plan going effective, pursuant to the Cinco Plan, the Effective Date was to be "the first Business Day (a) that is at least 14 days after the Confirmation Date; (b) on which no stay of the Confirmation Order is in effect; (c) no request for revocation of the Confirmation Order under Code § 1144 shall have been made, or, if made, shall remain pending; and (d) on which [specified] conditions have been satisfied or waived by Cinco[.]" (Dkt. 632 at § IV.H; *see also* Dkt. 634). Cinco maintains that the Effective Date of the Cinco Plan is February 19, 2021, on which date the Initial Settlement Payment was received by the Disbursing Agent, and on which date Cinco determined that the conditions to the Effective Date had been satisfied. Given the Court's determination that neither the Cinco Plan nor Confirmation Order imposed any conditions as to the source of the Initial Settlement Payment, given that the Initial Settlement Payment was wired and received by the Disbursing

Agent on February 19, 2021, and given that February 19, 2021: (a) was more than 14 days after the Confirmation Date; (b) was a date on which there was no stay of the Confirmation Order in effect; (c) was a date on which no request for revocation of the Confirmation Order was pending;[10] and (d) was a date on which Cinco determined that the conditions to the Effective Date had been satisfied, the Court concludes that the Effective Date of the Cinco Plan occurred on February 19, 2021.

Whether or not Mr. Sheafe and/or Cinco violated Cinco's operating agreement or Arizona law in relation to the funding of the Initial Settlement Payment is irrelevant to the Court's determination as to whether the Cinco Plan went effective.[11] Except as specifically provided in the Cinco Plan, nothing in the Cinco Plan affects the rights or liabilities of Mr. Sheafe or his affiliates, and Mr. Zarifi or his affiliates, other than the Debtor, with respect to Cinco Soldados. (Dkt. 632 at § IV.A). The Cinco Plan expressly provides that "[t]his means, without limitation, that each of Messrs. Zarifi and Sheafe retain their membership interests in and personal claims against Cinco Soldados." (Dkt. 632 at § IV.A).

Contrary to the Debtor's argument that Mr. Zarifi's concerns regarding the source of funding are manifesting, the Elkhorn Loan is an unsecured loan and the change in the identity of the lender does not materially impair or injure the Debtor or Mr. Zarifi. Further, it appears to the Court that the financing arrangement, as structured, was necessitated at least in part by the Debtor's refusal to agree to release the Skyline Deed of Trust until the Disbursing Agent received the Initial Settlement Payment. This issue could have been avoided by the Debtor tendering the release of the Skyline Deed of Trust with specific instructions that it could not be recorded until the funds were remitted to the Disbursing Agent, a common practice in real estate transactions. The Court also concurs with Cinco's position that an institutional lender will not fund a loan, where the collateral to be provided is encumbered by a disputed lien, and such lien has not been

---

[10] The Debtor Motion, which requests revocation of the Confirmation Order as an alternative source of relief, was filed on February 26, 2021.

[11] The Court also notes that in the *Objection to Cinco Soldados LLC's Notice of Effective Date* (Dkt. 762) filed by the Debtor on February 22, 2021, the Debtor takes the position that "whether the actions of Mr. Sheafe or Cinco in relation to the funding of the 'Initial Settlement Payment' violated Cinco's operating agreement or Arizona law is a non-core state law issue," which respect to such issue the Debtor does not consent to this Court's issuance of a final order or judgment. (Dkt. 762 at 4 n.1).

released. In effect, it appears that the Debtor's conduct, both with respect to the delivery of a release of the Skyline Deed of Trust and the allegations related to the violation of the Cinco operating agreement, were intended to block the Cinco Plan from going effective.

### C. Whether There are Grounds to Revoke the Confirmation Order

As discussed above, given the pending appeal, the Court finds that it lacks jurisdiction to consider the Debtor's request that the Court revoke the Confirmation Order. That being said, the Court may provide an indicative ruling pursuant to Federal Rule of Bankruptcy Procedure 8008, in which case the Court denies the request for revocation of the Confirmation Order. Further, even if the Court had jurisdiction to rule with respect to the Debtor's revocation request, the Court would deny such request.

As an initial note, the Debtor has moved for revocation of the Confirmation Order in a motion filed in the administrative case. However, a proceeding to revoke a chapter 11 confirmation order must be commenced by filing an adversary complaint. Fed. R. Bankr. P. 7001(5).

In addition, pursuant to § 1144, the Court may revoke a confirmation order "if and only if such order was procured by fraud."[12] 11 U.S.C. § 1144. "Fraud must be pled and proven." *In re Mission Heights Invs. Ltd. P'ship*, 202 B.R. 131, 138 (Bankr. D. Ariz. 1996). "Collateral attacks on a confirmation order, specifying legal theories other than fraud, will not lie." *Id*; *see also In re Asset Resol., LLC*, 542 F. App'x 578, 579 (9th Cir. 2013) ("Creditors may not collaterally attack a confirmed plan, even where the plan contains illegal provisions.").

"For purposes of [§ 1144], fraud has its usual common law meaning." *In re Cuzco Dev. U.S.A., LLC*, 585 B.R. 870, 876 (Bankr. D. Haw. 2018). In other words: (1) the debtor must have made a representation that was materially false; (2) the representation must have been known by the debtor to be false, must have been made without belief in its truth, or must have been made with reckless disregard for the truth; (3) the representation must have been made in order to induce the court to rely upon it; (4) the court must have so relied; (5) and the court must have

---

[12] Although in the Debtor's Motion, the Debtor argues that there are grounds "for revocation pursuant to 11 U.S.C. § 1144 and/or for relief under Rule 60," the Code and Rules are clear: "[s]ection 1144 of the Bankruptcy code is the only avenue for revoking a confirmed Chapter 11 plan." *In re Asset Resol., LLC*, 542 F. App'x 578, 579 (9th Cir. 2013).

entered the confirmation order in reliance on the misrepresentation. *Id.* (quoting *Tenn-Fla Partners v. First Union Nat'l Bank*, 226 F.3d 746 (6th Cir. 2000)).

The Debtor alleges that the misrepresentations and alleged material omissions underlying its fraud claim stem from Mr. Sheafe's testimony regarding the source and terms of the financing for Cinco's plan. As an initial note, the Debtor has misconstrued Mr. Sheafe's testimony. There is no indication or evidence that Mr. Sheafe's testimony regarding funding of the plan was false. Further, Mr. Sheafe's testimony regarding the source and terms of the financing was not material to the Court's Ruling & Order, Memorandum Decision, or entry of the Confirmation Order, such that the Debtor's claim that the Confirmation Order was procured by fraud must fail. The Court's concern with respect to the financing of the Initial Settlement Payment was whether there was a source of financing available to render Cinco's plan feasible, and to ensure that creditors would be promptly paid. As such, the Court imposed conditions on the timing of the financing, but the Court imposed no conditions on the source or terms of such financing. Moreover, the Cinco Plan has proven feasible. The Initial Settlement Payment was timely tendered to the Disbursing Agent and Cinco is in a position to fully and immediately effectuate its plan for the benefit of creditors and equity.

With respect to the Court's determination of the reasonableness of the compromise between Cinco and the Debtor, the Court considered Mr. Zarifi's concerns regarding a private loan, but ultimately determined that the concerns raised by Mr. Zarifi were not probable given the adverse economic impact on Mr. Sheafe, and given that the Cinco Plan does not affect Mr. Zarifi's membership interest in, rights with respect to, or remedies as against Cinco. Mr. Zarifi's concerns hold no additional weight under the current circumstances. The Court did not rely on Mr. Sheafe's testimony regarding the proposed lender to make this determination, and the Court's determination on this issue has not changed.

Given the Court's determination that it lacks jurisdiction to consider the Debtor's revocation request, and denies such request if providing an indicative ruling, or would deny the Debtor's revocation request even if it had jurisdiction, the Court need not consider the Debtor's proposed conditions to revocation of the Confirmation Order. In any event, what the Debtor has

proposed to do is complete a reorganization by paying all allowed claims in full and reserving enough additional funds to pay all other asserted claims, without the construct of a confirmed plan of reorganization, which proposition is not supported by law, as applied to the facts of this case.

## IV. Conclusion

Based upon the foregoing, it is the determination of this Court that the Effective Date of the Cinco Plan timely occurred under the terms of the Cinco Plan and Confirmation Order on February 19, 2021. The Court further determines that it lacks jurisdiction to consider the Debtor's request to revoke the Confirmation Order, which request was procedurally improper, but that pursuant to Federal Rule of Bankruptcy Procedure 8008(a), the Court denies the Debtor's request to revoke the Confirmation Order, and would deny such request even if the Court had jurisdiction.

Wherefore, based upon the foregoing, and for good cause shown;

**IT IS HEREBY ORDERED** denying the Debtor's Motion in its entirety.

**IT IS FURTHER ORDERED** granting Cinco's Motion.

**IT IS FURTHER ORDERED** authorizing the Disbursing Agent to execute his duties under the Confirmation Order and Cinco Plan, and to take all action necessary to effectuate the Cinco Plan.

**DATED AND SIGNED ABOVE.**