# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SKYLINE RIDGE, LLC,<br><br>          Debtor. | Chapter 11<br><br>Case No. 4:18-bk-01908-BMW<br><br>**RULING AND ORDER REGARDING MOTION FOR ALLOWANCE OF SUBSTANTIAL CONTRIBUTION CLAIM PURSUANT TO 11 U.S.C. §§ 507(a)(2), 503(d)(3) AND (4)** |

      This matter is before the Court pursuant to the *Motion for Allowance of Substantial Contribution Claim Pursuant to 11 U.S.C. §§ 507(a)(2), 503(d)(3) and (4)* (the "Motion") (DE 459) filed by Cinco Soldados LLC ("Cinco"), as supplemented by the *Supplement to Motion for Allowance of Substantial Contribution Claim Pursuant to 11 U.S.C. §§ 507(a)(2), 503(b)(3) and (4)* (DE 736); the declarations of Robert M. Charles, Jr. and Christopher H. Sheafe filed by Cinco in support of the Motion;[1] the responses to the Motion filed by Skyline Ridge, LLC (the "Debtor"

---

[1] Specifically, the *Declaration of Robert M. Charles, Jr. in Support of Motion for Allowance of Substantial Contribution Claim Pursuant to 11 U.S.C. §§ 507(a)(2), 503(d)(3) and (4)* (the "Charles Declaration") (DE 460); the *Declaration of Christopher H. Sheafe* (DE 495); the *Supplemental Declaration of Robert M. Charles, Jr. in Support of Substantial Contribution Fee Application* (DE 496); and the *Supplemental Declaration of Robert M. Charles, Jr. in Support of Reply in Support of Supplemented Motion for Allowance of Substantial Contribution Claim Pursuant to 11 U.S.C. §§ 507(a)(2), 503(b)(3) and (4)* (the "Supplemental Charles Declaration") (DE 751).

or "Skyline");[2] the replies filed by Cinco;[3] and all filings related thereto.

In the Motion, Cinco moves the Court pursuant to §§ 507(a)(2), 503(d)(3)(D), and 503(d)(4) for an order granting it an administrative expense claim in the amount of $89,462.32, representing fees and costs incurred by Cinco's counsel. Cinco moves for the requested relief on the basis that it substantially contributed to the bankruptcy estate, and is therefore entitled to recovery of such fees and costs.

Skyline opposes the Motion on the basis that Cinco is not a creditor and has not met the heavy burden of proving that a substantial contribution award is justified. Skyline argues that rather than seek to benefit the estate, Cinco has worked against the estate by pursuing confirmation of a self-interested plan that has diminished the bankruptcy estate by millions of dollars. Skyline further argues that to the extent the Court finds a basis to allow Cinco an administrative expense claim, the requested fees are unreasonable in relation to the amount of work performed and actual benefit conferred upon the estate, and should be substantially reduced.

The Court held an initial hearing on the Motion on November 21, 2019, at which time the Court set this matter to track the plan confirmation proceedings.

After the Court confirmed Cinco's plan, as amended and modified ("Cinco's Amended Plan"),[4] Cinco asked that this matter be set for further hearing.

The Court held a final hearing on the Motion on March 1, 2021, at which time the parties agreed that the Court could rule on the Motion without an evidentiary hearing or additional argument. At the conclusion of the hearing, the Court took this matter under advisement. The Motion is now ripe for adjudication.

Based upon the filings, arguments of counsel, and entire record in this case, the Court now

---

[2] Specifically, the *Response to Cinco Soldados, LLC's Motion for Allowance of Substantial Contribution Claim Pursuant to 11 U.S.C. §§ 507(a)(2), 503(d)(3) and (4)* (DE 487) and the *Response to Cinco Soldados, LLC's Supplement to Motion for Allowance of Substantial Contribution Claim Pursuant to 11 U.S.C. §§ 507(a)(2), 503(b)(3) and (4)* (DE 742).

[3] Specifically, the *Reply in Support of Motion for Allowance of Substantial Contribution Claim Pursuant to 11 U.S.C. §§ 507(a)(2), 503(b)(3) and (4)* (DE 494) and the *Reply in Support of Supplemented Motion for Allowance of Substantial Contribution Claim Pursuant to 11 U.S.C. §§ 507(a)(2), 503(b)(3) and (4)* (DE 750).

[4] See the *Confirmation Order* (the "Confirmation Order") (DE 709), attached to which are the confirmed plan and all related notices of errata and settlement stipulations.

issues its ruling.

## I. **Jurisdiction**

This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157. Cinco's Amended Plan expressly provides for this Court's retention of jurisdiction to resolve the Motion. (*See* DE 709 at 32, § VII.O.5).

## II. **Facts & Procedural Posture**

On March 1, 2018, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thus commencing this case. The Debtor's early monthly operating reports reflect no income, no sales, no payment to secured creditors, and operating expenses. (DE 100; DE 101; DE 128).

On June 29, 2018, the Debtor filed the *Debtor's Plan of Reorganization Dated June 29, 2018* (the "Initial Debtor Plan") (DE 114). The Initial Debtor Plan generally provided for payments to creditors over time to be funded in part through what appeared to be litigation proceeds, which were not adequately described, in a priority determined by the Initial Debtor Plan. The Initial Debtor Plan contained material deficiencies,[5] was facially unconfirmable, and provided for protracted litigation with many of the non-insider general unsecured claimants.

On July 10, 2018, the Debtor filed the *Debtor's 1st Amended Plan of Reorganization Dated July 10, 2018* (the "Debtor's First Amended Plan") (DE 117) and a disclosure statement. Like the Initial Debtor Plan, the Debtor's First Amended Plan generally provided for payments to creditors over time, and did not materially improve the Debtor's proposed treatment of the claims in this case or provide for a greater assured return to creditors. Like the Initial Debtor Plan, the Debtor's First Amended Plan presumed continued litigation of many of the disputed, contingent, and/or unliquidated claims in this case, and relied upon unspecified, speculative litigation proceeds.

On July 30, 2018, Cinco filed a motion in which it asked the Court to terminate the Debtor's exclusivity periods, which motion the Debtor opposed. (DE 126; DE 139). On September 20, 2018, the Court entered an order terminating the Debtor's exclusivity period for

---

[5] Among other issues, the Initial Debtor Plan contained numerous material blanks and inconsistent terms.

cause (the "Order Terminating Exclusivity"). (DE 160).

Shortly thereafter, Cinco filed a competing *Cinco Plan of Reorganization Dated September 18, 2018* (DE 163) (as amended and modified by a plan modification[6] and various stipulations,[7] the "Initial Cinco Plan") and a disclosure statement. The Initial Cinco Plan generally proposed to pay claims in full promptly after the effective date, on the date the claim became allowed, or as otherwise agreed by the parties, using funds generated from a settlement between Cinco and the Debtor. Pursuant to various stipulations, the Initial Cinco Plan provided for the resolution and payment of many of the disputed non-insider general unsecured claims.

On September 27, 2018, the Debtor filed the *Debtor's 2nd Amended Plan of Reorganization Dated September 27, 2018* (DE 166) (as amended, modified, and restated by various non-adverse modifications,[8] stipulations,[9] and the *Debtor's Second Amended, Modified, and Restated Plan of Reorganization* (DE 399), the "Debtor's Second Amended Plan"). The Debtor's Second Amended Plan proposed as follows: (1) payment of administrative expense claims pursuant to the Code; (2) payment of secured claims in full or in stipulated amounts within one year of the effective date of the plan; (3) payment of allowed non-insider general unsecured claims in 36 equal monthly installments, with interest at the federal statutory rate, with payments to commence upon the earlier of payment in full of all claims of higher priority or one year after the effective date; and (4) payment of allowed insider general unsecured claims in full with

---

[6] Specifically, *Cinco Soldados LLC's Notice of Non-Adverse Modification of Plan* (DE 587; *see also* DE 588).

[7] Specifically, the *Settlement Stipulation and Plan Modification Concerning Homeowners Association Claims* (DE 266); the *Settlement Stipulation and Plan Modification Concerning Pima County Claims* (DE 273); the *Settlement Stipulation and Plan Modification Concerning Trustee of RL Ventures, LLC* (DE 285); the *Settlement Stipulation and Plan Modification Concerning David Parri Claim* (DE 289); the *Settlement Stipulation and Plan Modification Concerning Claims of Earth's Healing, Inc. and Vicky Puchi-Saavedra Eduardo Saavedra* (DE 293); and the *Settlement Stipulation and Plan Modification Concerning Paula Stachowski and Daniel Stromberg Claims* (DE 531).

[8] Specifically, the *Non-Adverse Modification re: Class 13, Class 14 & All Disputed Claims* (DE 312) and the *Notice of Non-Adverse Modification of Plan Regarding Interest Accrual Date on Unsecured Claims* (DE 582).

[9] Specifically, the *Stipulation Between the Debtor and Fotinos Properties, LLC Regarding Treatment of Fotinos' Secured Claim Against the Debtor, and Acceptance of Debtor's Plan of Reorganization* (DE 267); the *Stipulation Between the Debtor and Rallis Creditors Allowing Claim and Modifying Plan Treatment of Class 7 Claim* (DE 283); and the *Stipulation and Plan Modification Concerning Homeowners Association Claims* (DE 294).

interest at the federal statutory rate upon the earlier of the time all claims of a higher priority had been paid in full, or five years after the effective date. (DE 267; DE 283; DE 312; DE 399). The Debtor's Second Amended Plan presumed continued litigation with some of the largest non-insider general unsecured claims in this case, with an unknown cost to the estate.

After certain Court-ordered changes to the respective disclosure statements were made, the Court approved the parties' disclosure statements, and set the competing Initial Cinco Plan and Debtor's Second Amended Plan for contested confirmation hearings. (DE 221; DE 223).

During the period of time between entry of the Order Terminating Exclusivity and commencement of the contested confirmation hearings, the Debtor sold numerous parcels of real property and used a portion of the net sale proceeds to pay certain secured debts, including all of the debt owed to Northern Trust Company, the largest secured creditor in this case. (DE 534 at § II.A.5; *see also* DE 375). During this period of time, certain other secured debts were paid from the sales of property owned by non-debtor parties. (DE 534 at § II.A.5). As a result of these property sales, certain of the Debtor's pre-petition secured debts totaling in excess of $1.5 million were satisfied in full. (DE 534 at § II.A.6; *see also* DE 255; DE 264; DE 375). The Debtor also paid all of its pre- and post-petition real property tax debt, albeit without obtaining prior Court approval. (DE 534 at § II.7; DE 278).

The remaining secured classes and the insider general unsecured class voted to accept the Debtor's Second Amended Plan and to reject the Initial Cinco Plan. (DE 304). The non-insider general unsecured classes voted to accept the Initial Cinco Plan and to reject the Debtor's Second Amended Plan. (DE 304).

The Court conducted an evidentiary hearing on the competing Debtor's Second Amended Plan and Initial Cinco Plan, which began in December 2019 and concluded in April 2020.

On June 10, 2020, the Court issued its *Ruling and Order Regarding Plan Confirmation* (the "Ruling and Order") (DE 620), in which the Court denied confirmation of both the Initial Cinco Plan and Debtor's Second Amended Plan, but granted the parties leave to amend their respective plans to rectify the deficiencies set forth in the Ruling and Order.

Thereafter, the Debtor filed the *Debtor's Third Amended Plan of Reorganization Dated*

*July 10, 2020* (as amended and modified by a notice of typographical errors,[10] the "Debtor's Third Amended Plan") (DE 627) and Cinco filed Cinco's Amended Plan.

After further briefing, the Court issued its *Memorandum Decision Regarding Confirmation of Amended Plans of Reorganization* (DE 706), in which the Court concluded that Cinco's Amended Plan was the only plan before the Court that satisfied the requirements for confirmation. On November 20, 2020, the Court entered the Confirmation Order denying confirmation of the Debtor's Third Amended Plan and confirming Cinco's Amended Plan.[11]

The effective date of Cinco's Amended Plan timely occurred on February 19, 2021, on which date, among other things, the settlement payment which provided funding for Cinco's Amended Plan was wired by Cinco to the plan disbursing agent to be distributed to creditors pursuant to the terms of Cinco's Amended Plan. (DE 788).

In the Motion, Cinco asks the Court to approve an administrative expense claim in the amount of $89,462.32, representing $88,357.50 in attorneys' fees and $1,104.82 in expenses incurred by Cinco in connection with the exclusivity termination motion, preparation and prosecution of Cinco's plans, opposing confirmation of the Debtor's plans, and related tasks. Cinco is only seeking attorneys' fees and costs incurred for the period between July 23, 2018, which was shortly before Cinco filed its motion to terminate the Debtor's exclusivity, and July 17, 2019, before the evidentiary contested confirmation hearing began. Substantial litigation pertaining to Cinco's plan occurred after July 17, 2019, with respect to which Cinco is not seeking any payment from the estate or Reorganized Debtor.

There is no dispute that the estate is solvent and that there are sufficient funds to pay any administrative expense claim that may be allowed.

/ / /

/ / /

---

[10] Specifically, the *Notice of Typographical Errors Re: Debtor's Third Amended Plan of Reorganization* (DE 645).

[11] Skyline has appealed the Confirmation Order. However, there is no stay pending appeal in effect.

### III. Legal Analysis & Conclusions of Law

Section 503 provides in relevant part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, . . . including –
> . . .
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by –
> . . .
> (D) a creditor . . . in making a substantial contribution in a case under chapter . . . 11 [of the Code];
> (4) reasonable compensation for professional services rendered by an attorney . . . of an entity whose expense is allowable under subparagraph . . . (D) . . . of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney . . . .

In other words, § 503(b)(4) "permits an administrative claim for fees and expenses of an attorney who represents a creditor who made a substantial contribution to the chapter 11 case." *In re 1910 Partners*, No. AP 15-15-9006, 2017 WL 6273314, at *8 (B.A.P. 9th Cir. Dec. 8, 2017).

"The question of substantial contribution is a fact intensive inquiry" and the creditor asserting a substantial contribution claim has the burden of establishing, by a preponderance of the evidence, that it has made a substantial contribution to the estate. *In re Mortgages Ltd.*, No. BAP AZ-09-1412-KiJuMk, 2010 WL 6259981, at *7 (B.A.P. 9th Cir. Aug. 4, 2010); *In re Cook Inlet Energy LLC*, 583 B.R. 494, 501 (B.A.P. 9th Cir. 2018).

#### A. Whether Cinco is a Creditor

The Court has already determined that Cinco is a creditor in this case. (DE 620 at 22). Cinco filed a proof of claim in an unspecified amount for damages, and although the Debtor objected to Cinco's claim, the Debtor did not pursue its claim objection, as is required by Local Rule 3007-1. (*See* Proof of Claim 29-1; DE 435; DE 450). Further, the claim objection was settled as part of Cinco's Amended Plan. (*See* Proof of Claim 29-1; DE 709 at 18-19).

Based upon the foregoing, the Court finds that Cinco is a "creditor," within the meaning of the Bankruptcy Code, and has standing to seek the administrative expense claim requested in the Motion.

## B. Whether Cinco Made a Substantial Contribution

"Substantial contribution" is not defined in the Code, and Ninth Circuit case law "does not clearly define what sort of conduct or activities constitute a 'substantial contribution in a case' that would support an award of fees and costs as an administrative expense." *In re Mortgages Ltd.*, 2010 WL 6259981, at *7. In the Ninth Circuit, "the principal test of substantial contribution is 'the extent of benefit to the estate.'" *In re Cellular 101, Inc.*, 377 F.3d 1092, 1096 (9th Cir. 2004) (quoting *In re Christian Life Ctr.*, 821 F.2d 1370, 1373 (9th Cir. 1987)). "Services that substantially contribute to a chapter 11 case are those that foster and enhance, rather than retard or interrupt, the progress of reorganization." *In re SONICblue, Inc.*, 422 B.R. 204, 213 (Bankr. N.D. Cal. 2009).

A creditor is not precluded from an administrative expense claim solely because that creditor has acted in its own self-interest. *In re Cellular 101, Inc.*, 377 F.3d at 1097-98; *In re Mortgages Ltd.*, 2010 WL 6259981, at *8. "However, in pursuit of that [self] interest, the claimant must confer a direct, not incidental or minimal, benefit to the estate that outweighs the benefit [the] claimant received, and [the] claimant's actions must foster, not retard, the progress of reorganization." *In re Mortgages Ltd.*, 2010 WL 6259981, at *8; *accord In re Cellular 101, Inc.*, 377 F.3d at 1097-98.

Although a creditor seeking a substantial contribution claim may submit "[c]orroborating testimony by a disinterested party" in support of its application, "disinterested testimony is not an exclusive predicate for a finding of substantial contribution." *In re M&G USA Corp.*, 599 B.R. 256, 262 (Bankr. D. Del. 2019) (quoting first *In re KiOR, Inc.*, 567 B.R. 451, 549 (D. Del 2017), then citing *In re Deval Corp.*, 592 B.R. 587, 599 (Bankr. E.D. Pa. 2018)). "[A] court may take into account its first-hand observance of the services provided throughout the entire chapter 11 case in determining whether an applicant has demonstrated that it made a substantial contribution to the case." *Id.* (quoting *In re Deval Corp.*, 592 B.R. at 599).

When evaluating a request for a substantial contribution claim, courts must independently assess each of the claimant's activities and determine whether each activity "benefitted the estate sufficiently to award the claimant expenses incurred for that activity." *In re Mortgages Ltd.*, 2010

WL 6259981, at *8.

In this case, Cinco is seeking attorneys' fees and costs related to the following: (1) Cinco's motion to terminate Skyline's exclusive right to propose a plan; (2) the drafting and pursuit of Cinco's disclosure statement and plans; (3) Cinco's objections to Skyline's disclosure statement and plans; (4) negotiations and communications with parties in interest; (5) attendance at hearings; (6) communications between Cinco and its counsel; (7) settlement negotiations; and (8) a review of the filings in this case.

Before Cinco became involved in this case, Skyline was pursuing[12] a plan that provided for payments over time, may or may not have paid creditors in full, and would have left a number of disputed, contingent, unliquidated claims unresolved and subject to additional litigation. It is clear from the record that after Cinco became involved in this case, the Debtor took actions that, among other things, resulted in the payment of all tax claims, the payment of the claims of certain creditors secured by real property, and the payment of several homeowners' association claims in full.[13] The Court finds it highly probable that the sales of property and payment of secured creditors that post-date the Order Terminating Exclusivity were spurred by Cinco's actions in this case. Moreover, and importantly, Cinco's plan, and the efforts that resulted in confirmation thereof, produced direct, substantial benefits to all creditors in the form of prompt payment in full, with interest, and also resulted in substantial benefits to Skyline's equity security holder, who retains a solvent, reorganized entity,[14] and receives numerous benefits flowing from the settlement of claims between Skyline and Cinco that is incorporated into Cinco's Amended Plan.[15]

---

[12] The Court uses this term loosely given that the Debtor's case was dismissed twice during the first month of this case, given that the Debtor did not file a disclosure statement to accompany the Initial Debtor Plan, and given that the Debtor did not promptly take action to pursue approval of its disclosure statement after such disclosure statement was eventually filed.

[13] The Court also notes that only after Cinco proposed its initial plan did Skyline begin to amend its plan to provide for better treatment to creditors and enter into settlement agreements with creditors. As the Court has already determined, however, Skyline's actions, taken in an attempt to track Cinco's progress in this case, proved insufficient.

[14] Pursuant to Cinco's Amended Plan, Skyline's principal remains the sole member of Skyline, which retained assets including in excess of $1.7 million in cash and in excess of $3.8 million in unencumbered real property. (DE 706 at 10-11).

[15] See DE 709 at 18-19, § IV.A.

In *Cellular 101*, the Ninth Circuit found that there had been a substantial contribution where the claimants formulated and presented the only reorganization plan, which plan resulted in full payment of allowed claims with funds remaining for equity holders, and waived disputed prepetition claims. 377 F.3d at 1097. The claimants in *Cellular 101* did not provide funds for the plan. *Id.*

In this case, not only did Cinco formulate and propose the only confirmable plan of reorganization, which has or will result in full, prompt payment of allowed claims with funds remaining for equity holders, but Cinco also provided the funding source for its plan, in the form of a settlement payment tendered by Cinco to the plan disbursing agent. As such, Cinco has provided a clear, substantial contribution to the estate.

Although Cinco benefitted from the pursuit and confirmation of Cinco's Amended Plan given the settlement between Cinco and Skyline set forth in Cinco's Amended Plan, the degree to which Cinco benefitted from its efforts in this case is outweighed by the extent of the benefits those efforts conferred on the bankruptcy estate. Ultimately, all parties in this case have benefitted from Cinco's efforts, given that Cinco's Amended Plan resolves all remaining disputes with creditors via fair and equitable settlements, and is a full payment plan that leaves significant funds and assets for equity.

Based upon the foregoing, the Court finds that Cinco has made a substantial contribution in this case.

### C. Whether the Fees and Costs Sought are Reasonable

Section 503(b)(4) "sets forth compensation standards that mirror those governing fee awards for debtors' attorneys under Section 330(a) of the Bankruptcy Code." *In re Wild N' Wave*, 509 F.3d 938, 942 (9th Cir. 2007). Under § 503(b)(4), a creditor is only entitled to "reasonable compensation" for services rendered by its attorney "based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under [the Code]," and a creditor is only entitled to reimbursement for "actual, necessary expenses incurred by such attorney . . . ." 11 U.S.C. § 503(b)(4).

The Debtor has raised objections to specific billing entries. (DE 742 at Ex. B). In sum, the

Debtor has objected to fees for services that it alleges: (1) are unrelated to Cinco's plans; (2) were unsuccessful; (3) only relate to one creditor; (4) could have been done by administrative personnel, but were charged at an attorney rate; (5) pertain to communications between Cinco and its counsel, which communications the Debtor argues are not compensable; (6) pertain to the correction of errors; (7) pertain to a motion that was withdrawn; (8) are possible duplicate entries; or (9) are vague or insufficiently described. In total, the Debtor objects to $39,253.50 on the basis that such fees are unreasonable, as not reflective of any benefit conferred upon the estate. The Debtor also asks that the $1,104.82 in costs that Cinco has requested be disallowed on the basis that Cinco has failed to provide any explanation as to how such costs provided a substantial contribution to the estate.

Cinco maintains that all of the fees and costs at issue are reasonable and provided a substantial benefit to this case.

Cinco retained Lewis Roca Rothgerber Christie, LLP ("LRRC") to represent it in this case. The attorney principally responsible for representation of Cinco in this bankruptcy case is Robert M. Charles, Jr., who is also the attorney responsible for billing in this matter. (DE 460 at ¶¶ 3-4). Mr. Charles has submitted that in compiling the billing entries that he used to calculate the amount of fees and costs sought in the Motion, he included only work done for services that provided a substantial benefit to the estate, and deleted those entries that related only to the interests of Cinco, but which did not benefit creditors generally. (DE 460 at ¶ 6). The Charles Declaration provides that with respect to the hourly rates billed in this matter, LRRC conducts periodic surveys of rates in its relevant markets, and Mr. Charles's rates are set based upon that market data, Mr. Charles's experience, and LRRC's views as to what rates are reasonable. (DE 460 at ¶ 7). Mr. Charles's time is ordinarily billed at a rate of $660 per hour, or at a discounted rate of $595 per hour. (DE 460 at ¶ 7). In this case, however, Mr. Charles's time was billed at the reduced rate of $495 per hour. (DE 460 at ¶ 7). Mr. Charles has submitted that the hourly rates set forth in the billing statements used to calculate the amount of the administrative expense claim being sought are reasonable in terms of the case, as well as in terms of the experience and qualifications of the timekeepers. (DE 460 at ¶ 8; DE 496 at ¶¶ 4-6 & Ex. A-B). The fees and

costs Cinco seeks as an administrative expense claim are detailed in the Charles Declaration and Supplemental Charles Declaration. (DE 460; DE 751).

Given the benefit of the services for which Cinco seeks payment and qualifications of counsel, the Court finds the time spent by Cinco's counsel on the services and the discounted rates charged for such services to be reasonable, especially in light of the relatively limited time period for which compensation is being sought.

The Court has reviewed each of the billing entries for which Cinco seeks compensation, and the Court finds the billing entries at issue, as supplemented by the Supplemental Charles Declaration, to be sufficiently detailed. The Charles Declaration and Supplemental Charles Declaration further illustrate and confirm that the fees which Cinco seeks as an administrative expense claim relate to: (1) Cinco's plans, the proposal, pursuit, and ultimate confirmation of which substantially benefitted the estate; (2) objecting to the Debtor's unconfirmable plans, which plan were less favorable to creditors than Cinco's plans; and/or (3) attempts to resolve this case for the benefit of all creditors.

That certain of the fees at issue were incurred to perform services that were ultimately unsuccessful, for example those pertaining to mediation and settlement discussions, does not render such fees non-compensable under § 503(b)(3) or (4). Fees charged for communications between creditor's counsel and the creditor that pertained to services that substantially benefitted the estate are likewise not ineligible for § 503(b)(4) administrative expense priority. Such communications are necessary in order for counsel to take action on behalf of the client, who is the decisionmaker, and are generally required under the applicable ethical rules. Additionally, the Debtor's argument that certain services benefitted only one creditor and are therefore not compensable is without support. In this case, the services that the Debtor asserts benefitted only one creditor pertained to plan treatment and settlements that benefitted the estate and promoted reorganization. Lastly, the Court does not find the work done by Cinco's counsel to correct errors in the record to be non-compensable, and the Court does not discern any duplicate billing entries or improper billings at an attorney rate. In sum, the Court finds that the Supplemental Charles Declaration (DE 751) sufficiently addresses and rebuts the line-item objections raised by Skyline.

All of the fees for which Cinco seeks allowance as an administrative expense claim were incurred for services that fostered and enhanced the reorganization process in this case.

With respect to the $1,104.82 in costs, the billing statements indicate that the costs are postage, photocopying, and Pacer costs. The Supplemental Charles Declaration addresses each billing entry in detail, and based upon the Supplemental Charles Declaration, the Court finds that the costs are all reasonably attributable to services that substantially benefitted the estate. The bulk of the costs at issue were incurred to photocopy and mail the joint solicitation packets. (DE 751 at ¶ 142). The remainder of the costs were incurred to serve Cinco's disclosure statement and plan, to obtain copies of court filings relevant to Cinco's disclosure statement and plan, and to serve court filings and ballots as part of the confirmation hearing process. (DE 751 at ¶¶ 137-143). All of the costs at issue are, therefore, clearly attributable to Cinco's pursuit of its plan, which efforts substantially benefitted the estate.

Based upon the foregoing, the Court finds that Cinco is entitled to an administrative expense claim for the fees and costs set forth in the Motion.

## IV. Conclusion

Sections 503(b)(3)(D) and (4) are intended strike a balance between "encouraging 'meaningful creditor participation in the reorganization process' and 'keeping fees and administrative expenses at a minimum so as to preserve as much of the estate as possible for the creditors.'" *In re Sedona Institute*, 220 B.R. 74, 79 (B.A.P. 9th Cir. 1998) (quoting *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994)). Allowance of the requested fees and costs as an administrative expense claim in this case strikes this balance. Cinco's participation in this case resulted in the only confirmable plan proposed in this case. That confirmed plan of reorganization provides for prompt, full payment to creditors, with interest, and leaves the Reorganized Debtor in a solvent position, with substantial unencumbered assets. Given that Cinco is only seeking fees and costs for a relatively limited period of time, additional estate assets are preserved for the benefit of creditors and Skyline's equity security holder.

Wherefore, based upon the foregoing and for good cause shown;

**IT IS HEREBY ORDERED** overruling the Debtor's objections to the Motion.

**IT IS FURTHER ORDERED** granting the Motion, granting Cinco an administrative expense claim pursuant to 11 U.S.C. §§ 507(a)(2), 503(b)(3), and 503(b)(4), and authorizing and directing Christopher Linscott, as the Disbursing Agent under Cinco's Amended Plan, to tender payment in the amount of $89,462.32 to Lewis Roca Rothgerber Christie LLP, counsel for Cinco.

**DATED AND SIGNED ABOVE.**